CASE NO. 24-1769

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

B.A., mother of minors D.A. and X.A.;

D.A., a minor, by and through his mother, B.A.;
X.A., a minor, by and through his mother, B.A.,

*Plaintiffs-Appellants,*

v.

TRI COUNTY AREA SCHOOLS;
ANDREW BUIKEMA, in his individual capacity;
WENDY BRADFORD, in her individual capacity,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Michigan
(1:23-cv-00423)

**APPELLANTS' PETITION FOR REHEARING AND
REHEARING EN BANC**

SARA E. BERINHOUT
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
sara.berinhout@thefire.org

CONOR T. FITZPATRICK
  *Counsel of Record*
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

RULE 40 STATEMENT ........................................................................... 1

BACKGROUND ..................................................................................... 4

REASONS FOR GRANTING REHEARING ........................................... 7

    I.    The Majority's Opinion Creates an Unnecessary Circuit Split and Adopts an Unworkable Test. ..................... 7

        A.    The majority's approach permits censorship on the basis of subjective taste. .......................................... 9

        B.    The majority relied on a 25-year-old decision other courts view as a dead letter post-*Morse*. ............. 13

    II.    The Majority's Approach Will Chill Students' Political Expression and Participation When They Should Be Preparing for Adulthood in a Pluralistic Society. ................ 17

CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ................................................................. 11

*B.A. v. Tri Cnty. Area Schs.,*
  No. 24-1769, 2025 WL 2911071 (6th Cir. Oct. 14, 2025) ............ passim

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.,*
  725 F.3d 293 (3d Cir. 2013)........................................................ passim

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.,*
  482 U.S. 569 (1987) ................................................................. 10

*Bethel Sch. Dist. No. 403 v. Fraser,*
  478 U.S. 675 (1986) ................................................................. passim

*Bible Believers v. Wayne County,*
  805 F.3d 228 (6th Cir. 2015) ................................................... 11

*Boroff v. Van Wert City Bd. of Educ.,*
  220 F.3d 465 (6th Cir. 2000) ................................................... passim

*Brown v. Bd. of Educ. of Topeka,*
  347 U.S. 483 (1954) ................................................................. 12

*C.S. v. McCrumb,*
  135 F.4th 1056 (6th Cir. 2025)................................................. 7

*C.S. v. McCrumb,*
  149 F.4th 848 (6th Cir. 2025)................................................... 9

*Chandler v. McMinnville Sch. Dist.,*
  978 F.2d 524 (9th Cir. 1992) ................................................... 1, 8

*Cohen v. California,*
  403 U.S. 15 (1971) ................................................................... 18

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.,*
  No. 23-3630, 2025 WL 3102072 (6th Cir. 2025)............................ 12, 15

*DePinto v. Bayonne Bd. of Educ.*,
  514 F. Supp. 2d 633 (D.N.J. 2007) ..................................................... 15

*Graham v. Florida*,
  560 U.S. 48 (2010) ................................................................................ 11

*Guiles ex rel. Guiles v. Marineau*,
  461 F.3d 320 (2d Cir. 2006) ......................................................... 2, 3, 14

*Hannegan v. Esquire, Inc.*,
  327 U.S. 146 (1946) ................................................................................ 9

*In re Citadel Broadcasting Co.*,
  17 FCC Rcd. 483 (2002) ........................................................................ 18

*L.M. v. Town of Middleborough*,
  103 F.4th 854 (1st Cir. 2024) ......................................................... 2, 18

*Mahanoy Area Sch. Dist. v. B.L.*,
  594 U.S. 180 (2021) .......................................................................... 8, 12

*Morse v. Frederick*,
  551 U.S. 393 (2007) ....................................................... 3, 14, 15, 16

*Nixon v. N. Loc. Sch. Dist. Bd. of Educ.*,
  383 F. Supp. 2d 965 (S.D. Ohio 2005) ................................................ 16

*Olmstead v. United States*,
  277 U.S. 438 (1928) .............................................................................. 19

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ................................................................... passim

*United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*,
  163 F.3d 341 (6th Cir. 1998) ......................................................... 10, 11

*United States v. Ray*,
  803 F.3d 244 (6th Cir. 2015) ................................................................ 11

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ....................................................................... 12, 19

*Zamecnik v. Indian Prairie Sch. Dist. No. 204*,
 636 F.3d 874 (7th Cir. 2011) ................................................................ 16

**Court Rules**

Fed. R. App. P. 40 ....................................................................... 1, 2, 3

**Congressional Records**

167 Cong. Rec. H5776 (daily ed. Oct. 21, 2021) ...................................... 5

167 Cong. Rec. H5880 (daily ed. Oct. 26, 2021) ...................................... 5

168 Cong. Rec. H5240 (daily ed. June 7, 2022) ....................................... 5

## RULE 40 STATEMENT

The panel's decision presents a paradigmatic case for en banc review. As Judge Bush's dissent explains, the decision "creates at least two circuit splits" and transforms the Sixth Circuit into a national outlier on public-school students' First Amendment rights. *B.A. v. Tri Cnty. Area Schs.*, No. 24-1769, 2025 WL 2911071, at *11 (6th Cir. Oct. 14, 2025) (Bush, J., dissenting).

The other circuits[1] have it right: The First Amendment protects a student's right to wear political apparel unless it causes substantial disruption or is "plainly" lewd or profane. This approach fulfills the Supreme Court's command in *Tinker* that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," while heeding its warning in *Fraser* that school is not the place for students to use profanity or sexual speech. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682–83 (1986).

---

[1] Pursuant to FRAP 40(b)(2)(C), the majority's opinion "splits with the Third and Ninth Circuits." *B.A.*, 2025 WL 2911071, at *23 (Bush, J., dissenting) (explaining the opinion's conflict with *B.H. ex rel. Hawk v. Easton Area School District*, 725 F.3d 293 (3d Cir. 2013) (en banc), and *Chandler v. McMinnville School District*, 978 F.2d 524 (9th Cir. 1992)).

The majority broke from that workable, common-sense framework and announced a new rule: If *any* principal or teacher "reasonably understands" political apparel to be lewd or profane, that's enough to censor it. *B.A.*, 2025 WL 2911071, at *4. No other circuit follows this untenable rule, which would make every school (and classroom) a kingdom unto itself. Students' constitutional rights would depend not on the content of their speech but on the sensitivity of each teacher and administrator. A political sweatshirt could have First Amendment protection in second-period algebra but not third-period biology. The majority's approach thus "open[s] the door for viewpoint discrimination," because it "grants schools unrestrained authority to suppress speech based on subjective interpretations." *Id.* at *20 (Bush, J., dissenting).

The majority's approach also "creates a split with the First and Second Circuits[2] by applying *Fraser*, rather than *Tinker*," to "facially non-obscene apparel" that "expresses an ideological slogan (*L.M.*) and criticizes a president (*Guiles*)." *Id.* at *23. To arrive at its holding, the majority relied on *Boroff v. Van Wert City Board of Education*, 220 F.3d

---

[2] Pursuant to FRAP 40(b)(2)(C), the majority's opinion conflicts with *L.M. v. Town of Middleborough*, 103 F.4th 854 (1st Cir. 2024), and *Guiles ex rel. Guiles v. Marineau*, 461 F.3d 320 (2d Cir. 2006).

465, 469–70 (6th Cir. 2000), which interpreted *Fraser* as allowing a school to ban Marilyn Manson band t-shirts as conflicting with the school's "educational mission." This is shaky ground. The Second Circuit explicitly rejected *Boroff*'s interpretation. *Guiles*, 461 F.3d at 329. And multiple courts, like the en banc Third Circuit, deem *Boroff* a dead letter and "incompatible with the Supreme Court's teachings" after its 2008 decision in *Morse*, which limited *Fraser*'s reach. *Hawk*, 725 F.3d at 316 (discussing *Morse v. Frederick*, 551 U.S. 393 (2007)).

As Judge Bush's dissent explains, the Third and Ninth Circuits "apply a more manageable and constitutionally faithful rule grounded in bedrock First Amendment principles." *B.A.*, 2025 WL 2911071, at *23. Their standard—that *Tinker* shields non-disruptive political apparel from individual administrators' sensitivities unless it is "plainly" lewd or profane—protects Appellants' sweatshirts with the euphemistic "Let's Go Brandon" political slogan.

The majority's decision crafted a new, outlier test for student political speech and relied on an outdated decision other courts treat as a nullity. Under FRAP 40(b)(2) it creates multiple circuit splits and involves a question of exceptional importance: the scope of public-school

students' First Amendment right to non-disruptive political speech. The Court should grant en banc review, return clarity to its approach, and supply predictability for school districts, parents, and students.

## BACKGROUND

At the heart of this case is the "Let's Go Brandon" political slogan. In 2021, after Brandon Brown won a NASCAR race, members of the crowd began chanting "Fuck Joe Biden" during Brown's post-race interview. A TV commentator remarked they were shouting "Let's Go Brandon!" and a political slogan was born. It transformed overnight into a popular, cleaned-up slogan for expressing displeasure with President Biden's administration.

The slogan was omnipresent on broadcast television, radio, and cable news. (Appellants' Opening Br., COA R. 21, Page ID ## 20–21 (citing public news sources).) The National Republican Congressional Committee sold "Let's Go Brandon" wrapping paper, and President Biden even repurposed the slogan for his own campaign, selling "Dark Brandon" merchandise. (*Id.* at Page ID ## 20, 21–22.) In Congress, to convey strong disapproval of President Biden's administration and initiatives, elected officials embraced "Let's Go Brandon" during floor

speeches without violating legislative decorum rules. *See* 168 Cong. Rec. H5240 (daily ed. June 7, 2022) (statement of Rep. Douglas L. LaMalfa); 167 Cong. Rec. H5880 (daily ed. Oct. 26, 2021) (statement of Rep. Mary E. Miller); 167 Cong. Rec. H5776 (daily ed. Oct. 21, 2021) (statement of Rep. William J. Posey).

During the 2021–2022 school year when the relevant events occurred, Plaintiffs-Appellants, brothers D.A. and X.A., were in sixth and eighth grade respectively in Defendant-Appellee Tri County Area Schools (the "School District"). Teachers described them as "polite," "kind," and "a joy to have in class." (Appellants' Opening Br., COA R. 21, Page ID # 18 (citing record).) After receiving "Let's Go Brandon" sweatshirts at Christmas from their mother, they wore them to school to silently express disapproval of President Biden. (*Id.* at Page ID ## 22–23.)

Defendant-Appellee Andrew Buikema, the assistant principal, and Defendant-Appellee Wendy Bradford, a teacher, instructed D.A. and X.A. to remove their sweatshirts or face discipline. (*Id.* at Page ID # 23.) Both testified they ordered removal of the apparel because they consider the political slogan "vulgar, profane, and pornographic." (*Id.* at Page ID # 24.)

Critically, the School District admits it: (1) never experienced disruption due to students using the "Let's Go Brandon" slogan or wearing apparel bearing the slogan, and (2) never experienced disruption due to students wearing political apparel or engaging in political discussions prior to or even after D.A. and X.A. wore the sweatshirts. (*Id.* at Page ID ## 25–27 (citing record).)[3]

The principal confirmed the censorship is solely tied to the phrase's use as a political slogan. He testified if a student were to insist their "Let's Go Brandon" shirt was in reference to, for instance, former Detroit Tigers third baseman Brandon Inge, there would be no violation of the school's profanity rule. (*Id.* at Page ID # 27.) Violation of the dress code turned not on *what* the students were saying, but on what administrators believed students were *thinking* when they said it.

After the School District refused to lift the prohibition, D.A. and X.A. filed this lawsuit. (Compl., RE 1, Page ID ## 15–27.) The district court held "Let's Go Brandon" constitutes "profanity" censorable by public schools and granted summary judgment for the School District and

---

[3] The School District's prohibition of "Let's Go Brandon" apparel extends to Tri County High School, which the brothers now attend.

its employees. (District Ct.'s Op. and Order, RE 58, Page ID ## 959–62.) A divided panel of this Court affirmed "[b]ecause the school reasonably understood the slogan 'Let's Go Brandon' to be vulgar." *B.A.*, 2025 WL 2911071, at *1.

## REASONS FOR GRANTING REHEARING

### I.    The Majority's Opinion Creates an Unnecessary Circuit Split and Adopts an Unworkable Test.

The majority decision creates a circuit split on an issue affecting millions of public-school students: What political apparel does the First Amendment protect at school? Before the majority's opinion, the rule under *Tinker* was clear and predictable: A school may not censor political speech unless it demonstrates actual, or reasonably forecasted, substantial disruption. 393 U.S. at 514 (upholding First Amendment rights of students to wear armbands protesting the Vietnam War). *Fraser* articulated a narrow exception to *Tinker*, allowing schools to "regulate student speech that is … distractingly vulgar or lewd." *C.S. v. McCrumb*, 135 F.4th 1056, 1062 (6th Cir. 2025) (citing *Fraser*, 478 U.S. at 685).

The Supreme Court maintains that students engaging with classmates on the issues of the day is not only a First Amendment right, but core to an American education. Schools act as our "nurseries of

democracy," so they "have a strong interest in ensuring that future generations understand the workings in practice of the well-known aphorism, 'I disapprove of what you say, but I will defend to the death your right to say it.'" *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 190 (2021). Listening to and engaging with different viewpoints prepares students to "grow up and live in this relatively permissive, often disputatious, society." *Tinker*, 393 U.S. at 508–09.

To prevent the *Fraser* exception from swallowing the *Tinker* rule, the Third and Ninth Circuits—the only two (before now) to squarely address *Fraser*'s interaction with political speech—held it applies "only when the speech at issue is 'per se vulgar, lewd, obscene, or plainly offensive,' and not just 'ambiguously lewd' like the speech here." *B.A.*, 2025 WL 2911071, at *23 (Bush, J., dissenting) (quoting *Hawk*, 725 F.3d at 308; and citing *Chandler*, 978 F.2d at 530). This approach reflects the sensible understanding that school is not the place for students to use swearwords or engage in sexual speech, while providing breathing room for non-disruptive, but pointed, political speech. And it guards against selective enforcement, critical in the First Amendment context because

"[w]hat seems to one to be trash may have for others fleeting or even enduring values." *Hannegan v. Esquire, Inc.*, 327 U.S. 146, 158 (1946).

The majority's opinion rejects this workable framework in favor of case-by-case subjectivity no circuit has adopted, allowing censorship when any administrator or teacher "reasonably understands" a message as lewd or profane. Unlike prior school speech disputes, this is not a "good for one-ride only" case. *C.S. v. McCrumb*, 149 F.4th 848, 854 (6th Cir. 2025) (Readler, J., respecting the denial of rehearing en banc). The majority's opinion established a new rule limiting the right of every student in this Circuit to wear political apparel. If the Court wishes to diverge so sharply from its sister circuits, it should do so en banc.

## A. The majority's approach permits censorship on the basis of subjective taste.

Two non-disruptive students in the same state wearing the same shirt should not have different constitutional rights. But under the majority's approach, they will. It allows each school district, school administrator, and teacher to subjectively decide what is "lewd" or "vulgar." So long as their determination is "reasonable," they not only avoid monetary liability, they *dictate whether the student's political expression is constitutionally protected.*

9

That is unconstitutional and unworkable. Here's how it would unfold in practice: Two Michigan public high school students, one in Detroit and another in Dowagiac, arrive at school quietly wearing a t-shirt with Governor Gretchen Whitmer's "Fix the Damn Roads" slogan. One school is untroubled by the apparel. The other finds the slogan "profane" and orders the student to remove the shirt or face suspension. In the majority's view, the First Amendment protects the shirt in one district, but the *same shirt* is unprotected in the other, based purely on the sensitivity of administrators. Students' First Amendment rights do not and must not depend on their zip code, especially as such a standard is ripe for viewpoint discrimination. *See B.A.*, 2025 WL 2911071, at *20, *21, *22 (Bush, J., dissenting).

The First Amendment rejects subjective standards because they "invite[] abuse by enabling the official to administer the policy on the basis of impermissible factors." *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998). The "opportunity for abuse" of a prohibition with "open-ended interpretation is self-evident." *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (quotation marks omitted). This Court

10

explained, "We will not presume that the public official responsible for administering" a rule regulating speech "will act in good faith and respect a speaker's First Amendment rights." *United Food*, 163 F.3d at 359; *see also Bible Believers v. Wayne County*, 805 F.3d 228, 246 (6th Cir. 2015) ("We rely on an objective standard to draw the boundaries" of a category of unprotected speech.). This basic principle of objectivity—that the Constitution protects the same non-disruptive political speech in East High School as in West High School—is irreconcilable with the majority's deputization of individual administrators to determine what speech is sanctionable.[4]

The majority insists its standard "is consistent with the history of how free speech rights were understood at the time of the Fourteenth Amendment's ratification." *B.A.*, 2025 WL 2911071, at *6. The Supreme Court already rejected this approach because public schools as we know

---

[4] Constitutional objectivity is not confined to the First Amendment. *See, e.g.*, *United States v. Ray*, 803 F.3d 244, 266 n.12 (6th Cir. 2015) ("Whether a suspect is 'in custody,'" such that Fifth Amendment rights attach "is an objective determination."); *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (holding likewise for the Fourth Amendment); *Graham v. Florida*, 560 U.S. 48, 61–62 (2010) (holding likewise for analyzing violations of the Eighth Amendment's prohibition on "cruel and unusual punishment.").

them *did not exist* during the Fourteenth Amendment's framing. *Brown v. Bd. of Educ. of Topeka,* 347 U.S. 483, 490 (1954). Therefore, there is "little in the history of the Fourteenth Amendment relating to its intended effect on public education." *Id.*

Justice Alito's *Mahanoy* concurrence instructs that looking to 19th-century schools to assess modern public-school students' First Amendment rights is untenable because, today, "when a public school regulates student speech" it does so as an "arm of the State." 594 U.S. at 196.[5] *Cf. W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943) (explaining public-school administrators "have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights.").

At bottom, the *Tinker* Court was unequivocal that public-school students "may not be confined to the expression of those sentiments that are officially approved." 393 U.S. at 511. And "school officials do not have limitless discretion to apply their own notions of indecency. Courts have a First Amendment responsibility to [e]nsure that robust rhetoric is not

---

[5] *See also Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 23-3630, 2025 WL 3102072, at *6 (6th Cir. 2025) (en banc) (discussing same, citing to and relying on Justice Alito's *Mahanoy* concurrence).

suppressed by prudish failures to distinguish the vigorous from the vulgar." *Fraser*, 478 U.S. at 689–90 (Brennan, J., concurring) (quotation marks omitted).

The Third and Ninth Circuits' approach honors that warning, confining *Fraser*'s reach to "plainly" lewd and profane political speech, *i.e.*, swearwords and sexual speech. That is a sensible and uniform standard which informs students of what is forbidden, and which ensures staff cannot discriminate (intentionally or not) against unpopular messages. And *Tinker* always stands ready as a circuit breaker, permitting schools to immediately step in if student expression causes, or is reasonably forecast to cause, substantial disruption. The majority's departure from that standard, predicated on a historical approach the Supreme Court rejected 70 years ago, deserves en banc review.

## B. The majority relied on a 25-year-old decision other courts view as a dead letter post-*Morse*.

To support its expansive view of *Fraser*, the majority relied on this Court's 2000 decision in *Boroff*, which upheld a school's prohibition of Marilyn Manson band t-shirts. 220 F.3d 465. The majority says *Boroff* "is best understood as simply reaffirming *Fraser*'s core holding that determinations of what is impermissibly vulgar, lewd, indecent, or

plainly offensive should be left in the hands of teachers, school administrators, and the popularly elected school board." *B.A.*, 2025 WL 2911071, at \*6. But *Boroff*'s interpretation of *Fraser* as granting extensive deference to local schools was explicitly rejected by the Supreme Court in *Morse v. Frederick*, 551 U.S. 393.

In 2007, the *Morse* Court addressed a high school's suspension of a student for displaying a "BONG HiTS 4 JESUS" banner. *Id.* at 409. The school attempted to rely on *Fraser*, arguing it granted substantial autonomy to administrators to decide what constitutes inappropriate speech. Chief Justice Roberts, writing for the majority, rejected that argument, holding it "stretches *Fraser* too far; that case should not be read to encompass any speech that could fit under some definition of 'offensive.' After all, much political and religious speech might be perceived as offensive to some." *Id.*[6]

Following *Morse*, multiple courts have treated *Boroff* as a dead letter. For example, the Third Circuit described *Boroff* as a case that

---

[6] Applying *Tinker* and *Fraser*, the Second Circuit held the First Amendment protected a shirt calling then-President George W. Bush a "Crook," "Cocaine Addict," "AWOL, Draft Dodger," and "Lying Drunk Driver." *Guiles*, 461 F.3d at 322, 330–31.

"before *Morse* ... adopted th[e] broad interpretation" of *Fraser*, but is now "incompatible with the Supreme Court's teachings." *Hawk*, 725 F.3d at 316; *see also*, *e.g.*, *DePinto v. Bayonne Bd. of Educ.*, 514 F. Supp. 2d 633, 644 (D.N.J. 2007) ("*Boroff* stands alone in support of ... a broad interpretation of *Fraser*. Further, the *Boroff* Court's analysis must now be called into question based on [*Morse*].").

Boroff* is also inapposite twice over. First, it did not involve political speech—a "marked distinction" between *Tinker*'s "political" anti-war armbands and the non-political "sexual content" of Matthew Fraser's student council speech at a mandatory school assembly. *Fraser*, 478 U.S. at 680.[7] This Court, en banc, recently emphasized this important distinction and explained First Amendment protection in schools "reaches its apex" when speech is "political." *Defending Educ.*, 2025 WL 3102072, at *10 (6th Cir. Nov. 6, 2025); *see also id.* at *12 ("[S]peech that discusses matters of public concern" "occupies the highest rung of the

---

[7] The majority contends that the sexual student council assembly speech in *Fraser* was "political" speech. *B.A.*, 2025 WL 2911071, at *8. Not only did the *Fraser* Court itself reject this view, 478 U.S. at 680, this Court rejected it en banc on November 6, 2025. *Defending Educ.*, 2025 WL 3102072 at *12.

hierarchy of First Amendment values and so receives special protection from the courts.") (cleaned up).

Other courts in this Circuit similarly distinguish *Boroff* as inapplicable to political speech cases. The Southern District of Ohio held a student had a First Amendment right to wear apparel containing messages including "Homosexuality is a sin! Islam is a lie! Abortion is murder!" *Nixon v. N. Loc. Sch. Dist. Bd. of Educ.*, 383 F. Supp. 2d 965, 967 (S.D. Ohio 2005). The court relied on *Tinker* and rejected the school's reliance on *Boroff*, calling it "clearly distinguishable" due to the lack of political message in the Marilyn Manson apparel. *Id.* at 972.

Second, the shirt in *Boroff* "advocated, albeit obliquely, the use of illegal drugs, a form of advocacy in the school setting that can be prohibited without evidence of disruption." *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 877 (7th Cir. 2011) (discussing *Boroff* and citing *Morse*).

At minimum, the Court should grant en banc review to provide clarity on whether, and to what extent, *Boroff* remains good law (1) after *Morse* and (2) with respect to political speech.

## II. The Majority's Approach Will Chill Students' Political Expression and Participation When They Should Be Preparing for Adulthood in a Pluralistic Society.

If the majority's approach remains the law of this Circuit, civic participation will suffer. If teenagers must now fear suspension (or, even worse, their parents arriving at school with a change of clothes) for wearing apparel with a political message any teacher or administrator "reasonably understands" as lewd or profane, few will risk exercising the right to non-disruptive expression that *Tinker* guarantees.

But allowing sanitized expression enables students to express themselves in a manner peers understand and appreciate while keeping profanity and sexually lewd speech off school grounds. *See, e.g.*, *Hawk*, 725 F.3d at 298 (upholding middle schoolers' right to wear "I ❤️ Boobies!" breast cancer awareness bracelets, noting the goal of portraying awareness as "cool and trendy").

Sanitizing expression so it retains an edge but omits the explicit is nothing new. It is why radio edits of songs and Kidz Bop exist. For example, in *In re Citadel Broadcasting Co.*, the FCC held the radio edits to Eminem's Grammy-winning song "The Real Slim Shady"—which scrubbed and sanitized the original's profanity and sexually explicit

17

language—meant the clean version was appropriate for the airwaves and its all-ages audience. 17 FCC Rcd. 483, 486 (2002).

The Supreme Court explained that "the First Amendment gives a high school student the classroom right to wear Tinker's armband, but not Cohen's ['Fuck the Draft'] jacket." *Fraser*, 478 U.S. at 682 (citing *Cohen v. California*, 403 U.S. 15 (1971)). This makes good sense. Kids can't say "fuck" at school. But under the majority's approach, a school could even prohibit anti-draft apparel saying "Cohen's Jacket" on grounds it "still conveyed th[e] vulgar message" of the uncensored original. *B.A.*, 2025 WL 2911071, at *5. This would mean that no matter how careful students are to express their political views in school-appropriate, cleaned-up ways, schools may still censor their expression if it might cause someone to *think* about the uncensored version. America's students are not so fragile, and the First Amendment is not so brittle.

*Tinker* must remain the north star for non-disruptive political speech. As Judge Bush's dissent explained, the majority abandoned this principle and split from the First and Second Circuits "by applying *Fraser*, rather than *Tinker*" to "facially non-obscene apparel" that "expresses an ideological slogan (*L.M.*) and criticizes a president

18

(*Guiles*).” *Id.* at *23. This Court should rejoin its sister circuits and hold *Tinker* broadly guarantees students' right to political speech with *Fraser* standing as a narrow, rare exception.

Censoring non-disruptive political speech that is not plainly profane or sexually lewd leaves students unprepared for life as an American adult, where every belief, no matter how sacred, will be fair game for disagreement and even ridicule (often with *real* swearwords). And it teaches the next generation that the way to fight disagreeable speech is by silencing the speaker. “Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example.” *Olmstead v. United States*, 277 U.S. 438, 485 (1928). This is particularly true of our public schools. “That [schools] are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes.” *Barnette*, 319 U.S. at 637. Granting en banc review will ensure this Circuit's public-school students can exercise constitutional rights, not just learn about them.

## CONCLUSION

D.A. and X.A. respectfully request the Court grant en banc review.[8]

Dated: November 12, 2025

/s/ Conor T. Fitzpatrick
_____

CONOR T. FITZPATRICK
  *Counsel of Record*
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473
conor.fitzpatrick@thefire.org

SARA E. BERINHOUT
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
sara.berinhout@thefire.org

*Counsel for Appellants*

---

[8] As Judge Bush noted, this Court need only resolve the "constitutional issue" of the scope of the First Amendment's protection (determinative of D.A. and X.A.'s claim for injunctive and declaratory relief against the School District's prohibition) and remand qualified immunity for the district court to consider in the first instance. *B.A.*, 2025 WL 2911071, at *11 (Bush, J., dissenting).

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This brief complies with the type-volume limitation of Rule 40(d)(3)(A) of the Federal Rules of Appellate Procedure because it contains 3,900 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(5) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-point font.

Dated: November 12, 2025

/s/ Conor T. Fitzpatrick
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 12, 2025, an electronic copy of Appellants' Petition for Rehearing and Rehearing En Banc was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

Dated: November 12, 2025

/s/ Conor T. Fitzpatrick
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION