# In the United States Court of Appeals for the Sixth Circuit

B.A., mother of minors D.A. and X.A.;
D.A., a minor, by and through his mother, B.A.;
X.A., a minor, by and through his mother, B.A.,

*Plaintiffs-Appellants,*

*v.*

TRI COUNTY AREA SCHOOLS;
ANDREW BUIKEMA, in his individual capacity;
WENDY BRADFORD, in her individual capacity,

*Defendants-Appellees.*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, NO. 1:23-CV-00423, HON. PAUL L. MALONEY*

## RESPONSE TO PETITION FOR REHEARING AND REHEARING EN BANC

ANNABEL SHEA
KENNETH B. CHAPIE
GIARMARCO, MULLINS & HORTON, PC
  101 W. Big Beaver Rd., 10th Fl.
  Troy, MI 48084
  (248) 457-7020

LISA S. BLATT
  *Counsel of Record*
CHARLES L. MCCLOUD
ERIN M. SIELAFF
CLAIRE E. GRODEN
WILLIAMS & CONNOLLY LLP
  680 Maine Avenue SW
  Washington, DC 20024
  (202) 434-5000
  lblatt@wc.com
*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

Page

Statement Opposing Rehearing ..........................................................1
Background ...............................................................................3
Reasons for Denying Rehearing ...........................................5
I.    The Panel Decision Is Correct ...................................5
II.   This Case Does Not Warrant En Banc Review ......................10
    A.    There Is No Circuit Split ...............................10
    B.    En Banc Review Is Not Warranted to Reevaluate *Boroff*...........13
    C.    The Panel's Decision Is Viewpoint Neutral ...................15
    D.    Plaintiffs' Policy Arguments Fail .......................17
Conclusion.............................................................................19

# TABLE OF AUTHORITIES

Page

## CASES

*B.A.P. v. Overton Cnty. Bd. of Educ.*,
  600 F. Supp. 3d 839 (M.D. Tenn. 2022) ........................................14
*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*,
  725 F.3d 293 (3d Cir. 2013) (en banc) ..............................10, 11, 12
*Barr v. Lafon*, 538 F.3d 554 (6th Cir. 2008) ........................................17
*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986).........................*passim*
*Blackwell v. Issaquena Cnty. Bd. of Educ.*, 363 F.2d 749 (5th Cir. 1966).......17
*Boroff v. Van Wert City Bd. of Educ.*,
  220 F.3d 465 (6th Cir. 2000)..........................................1, 13, 14, 15
*Brown v. Cooper*, 2015 WL 1129118 (E.D. Mich. Mar. 12, 2015) ....................14
*Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966)................................17
*Castorina ex rel. Rewt v. Madison Cnty. Sch. Bd.*,
  246 F.3d 536 (6th Cir. 2001)..........................................17
*Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524 (9th Cir. 1992)............10, 11
*Cohen v. California*, 403 U.S. 15 (1971) ................................5, 6
*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
  __ F.4th __, 2025 WL 3102072 (6th Cir. 2025) (en banc)..........................9, 14
*Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461 (2025) ..................................16
*Guiles ex rel. Guiles v. Marineau*, 461 F.3d 320 (2d Cir. 2006) ......................13
*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988)..................................18
*L.M. v. Town of Middleborough*, 103 F.4th 854 (1st Cir. 2024) ........................13
*Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180 (2021)........................................9
*Mahmoud v. Taylor*, 606 U.S. 522 (2025) ........................................10
*Marshall v. Ohio Univ.*, 2015 WL 7254213 (S.D. Ohio Nov. 17, 2015) ............14
*Miller v. California*, 413 U.S. 15 (1973) ................................16
*Miller v. Del. Cnty. Comm'rs*, 2014 WL 457552 (S.D. Ohio Feb. 4, 2014) ......15
*Morse v. Frederick*, 551 U.S. 393 (2007) ..................................1, 12, 14
*Sandusky v. Smith*, 2012 WL 4592635 (W.D. Ky. Oct. 2, 2012) ......................15
*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ......*passim*
*Wynar v. Douglas Cnty. Sch. Dist.*, 728 F.3d 1062 (9th Cir. 2013)..................11

## COURT RULE

6th Cir. I.O.P. 40(e)................................................14

## OTHER AUTHORITIES

Elizabeth A. Grill, *Let's Talk About Male Mental Health, Masculinity, and Sex*, Psych. Today (June 1, 2025), https://tinyurl.com/5btbfvnz............8

Howard City, MI Voting, *BestPlaces*, https://tinyurl.com/95sxt5xa .................3

Barry W. McCarthy, *Female Sexual Desire: A Motivating, Empowering Approach*, Psych. Today (Jan. 7, 2014), https://tinyurl.com/mw8du2ht...............................................................8

Zach Montarello, *Donald Trump Flips Michigan*, Politico, (Nov. 6, 2024), https://tinyurl.com/4ztcpan8.............................................3, 4

*Our District*, Tri Cnty. Area Schs., https://tinyurl.com/nhjuk9vj ....................3

*Talking to Your Child About Sex*, HealthyChildren.org, https://tinyurl.com/36zvp6ax .............................................................8

**STATEMENT OPPOSING REHEARING**

Two middle schoolers wore sweatshirts emblazoned with a euphemistic phrase with one, and only one, meaning: "F*** Joe Biden!"  The panel correctly held that school administrators reasonably concluded middle-school students could find other, more appropriate ways to express their displeasure with then-President Joe Biden.

Plaintiffs identify no basis for the full Court to revisit that conclusion. Plaintiffs' two purported circuit splits are illusory.  And their argument that a rarely-cited Sixth Circuit opinion (*Boroff*) discussed by the panel had been rendered "a dead letter" by Supreme Court precedent (*Morse*), Pet. 3, is not the stuff en banc treatment is made of.

Plaintiffs predict that the panel decision will chill students from expressing their political beliefs in school.  But the notion that twelve-year-olds will be "unprepared for life as an American adult," Pet. 19, without the ability to deploy vulgar euphemisms and codewords about the President on school grounds is hard to take seriously.  For starters, online retailers like Amazon, Etsy, and TeePublic offer a panoply of other options that do not feature coded vulgarity, including these two currently on sale for under $25:



TeePublic, teepublic.com/t-shirt/19704835; TeePublic, teepublic.com/t-shirt/23874989. And the record here shows that Tri County Area Schools students routinely wore (non-vulgar) political apparel from both sides of the aisle without censure. *Infra* p. 4.

At bottom, it is plaintiffs, not the panel, who want to change the law. Longstanding Supreme Court precedent imbues school administrators with discretion to reasonably restrict vulgar student speech, even when that speech carries a political message. But in plaintiffs' world, fifth graders could show up to class donning anti-Trump "Grab 'em by the 🐱" t-shirts. App. 9a-10a. Sixth graders could wear "Kamala is a See You Next Tuesday" pins to school. *Cf.* App. 37a. And seventh graders could sport shirts with the slogan "The Back Door is the Fun Door—But Use Protection" to raise HIV/AIDS awareness. *Cf.* App. 24a. The First Amendment does not require school

administrators to allow middle-school classrooms to devolve from "nurseries of democracy," Pet. 7-8 (citation omitted), into nurseries of debauchery. The Court should deny the rehearing petition.

## BACKGROUND

In 2021, an interview with racecar driver Brandon Brown went viral after the reporter described the crowd as chanting "Let's Go Brandon" instead of "F*** Joe Biden." Op. 2-3. Later that year, plaintiffs D.A. and X.A. received "Let's Go Brandon" sweatshirts from their mother, plaintiff B.A., for Christmas. Op. 3. Both children had seen Brown's interview, knew the meaning of "Let's Go Brandon," and thought the sweatshirt was "funny" because it meant "F*** Joe Biden." D.A. Dep., R.38-2, PAGEID#404; X.A. Dep., R.38-3, PAGEID#411.

D.A. and X.A. attended Tri County Area Middle School, located in Howard City, Michigan, a "strongly conservative," rural town. Op. 3; Howard City, MI Voting, *BestPlaces*, https://tinyurl.com/95sxt5xa. The school district serves parts of Montcalm and Newaygo Counties, which both overwhelmingly voted for President Trump in the 2024 election; and part of Kent County, which voted for then-Vice President Harris. *Our District*, Tri Cnty. Area Schs., https://tinyurl.com/nhjuk9vj; Zach Montellaro, *Donald Trump Flips*

*Michigan*, Politico (Nov. 6, 2024), https://tinyurl.com/4ztcpan8. Given the district's political diversity, students regularly wore MAGA, Trump, and Biden apparel to school. Buikema Dep., R.38-4, PAGEID#421; Bradford Dep., R.38-5, PAGEID#440; Williams Dep., R.38-6, PAGEID#456.

D.A., then a sixth grader, wore his "Let's Go Brandon" sweatshirt to school in February 2022; Assistant Principal Andrew Buikema asked him to remove it "since the phrase 'means the F-word.'" Op. 3 (quoting Buikema Dep., R.38-4, PAGEID#433). When D.A. wore his sweatshirt to school again, teacher Wendy Bradford told D.A. "[y]ou might want to take that off, otherwise Mr. Buikema is right down the hallway, you can talk to him." Op. 4 (quoting Bradford Dep., R.38-5, PAGEID#446). Eighth grader X.A. wore his sweatshirt to school in May 2022; "Buikema called him to the front office and told him to remove the sweatshirt because the slogan had a 'profane double meaning'" and violated the school's dress code. Op. 4 (quoting Buikema Dep., R.38-4, PAGEID#433).

The dress code, for its part, prohibited "[a]ttire with messages or illustrations that are lewd, indecent, vulgar, or profane, or that advertise any product or service not permitted by law to minors." Op. 4 (quoting TCMS Student Handbook, R.39-10, PAGEID#644). Pursuant to the dress code,

teachers and administrators have asked Tri County students to remove other euphemistically lewd apparel in the past, including a "Fet's Luck" hat and "Uranus Liquor" hoodie.  Bradford Dep., R.38-5, PAGEID#441; Buikema Dep., R.38-4, PAGEID#422.

Plaintiffs sued the school district, Buikema, and Bradford, raising various First and Fourteenth Amendment claims and seeking injunctive relief, an unspecified amount of damages, and attorneys' fees.  Op. 5; *see generally* Compl., R.1.  The district court granted defendants' summary-judgment motion, holding that "Let's Go Brandon" was profane, and this Court affirmed over Judge Bush's dissent.  Op. 5.

## REASONS FOR DENYING REHEARING

### I.  The Panel Decision Is Correct

The panel correctly rejected plaintiffs' First and Fourteenth Amendment claims.  To start, the panel held that school administrators reasonably classified "Let's Go Brandon" as having a "plainly vulgar meaning" despite lacking explicitly profane words.  Op. 13.  Indeed, there is no reason to wear the sweatshirt but to express the F word.  And the F word is one of the most "distasteful" profane words in the English language.  *Cohen v. California*, 403 U.S. 15, 25 (1971).  Precedent and the common law alike show that "a school may regulate speech that conveys an obscene or vulgar message

even when the words used are not themselves obscene or vulgar." Op. 9-12 (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986)). *Fraser*, for instance, addressed not "'plainly' lewd or profane speech," Pet. 1, but "sexual innuendo," 478 U.S. at 683. Administrators therefore have "discretion … to regulate speech that is *reasonably understood* as vulgar," because they are better suited than "unelected federal judges" to understand what is appropriate for the school environment. Op. 10-11.

The panel also correctly determined that the "political valence" of "Let's Go Brandon" was not a basis for applying *Tinker* instead of *Fraser*. Op. 13. *Fraser* itself involved political speech: The student speaker was nominating his peer for "student elective office" as part of the school's "educational program in self-government." 478 U.S. at 677. And *Fraser* was explicit that its rule would capture other forms of political speech, explaining that the First Amendment does not give students the right to wear "Cohen's [F*** the Draft] jacket," *id.* at 683 (citation omitted) (discussing *Cohen*, 403 U.S. 15), because "vulgarity trumps the political aspect of speech at school," Op. 14-15.

Plaintiffs propose (1) stripping school officials of the discretion to determine what is vulgar, and (2) applying *Tinker*'s substantial-disruption standard to "ambiguously" vulgar political speech. Plaintiffs (at 8) reason that

exempting "ambiguously" vulgar political speech from *Fraser* "prevent[s] the *Fraser* exception from swallowing the *Tinker* rule." But plaintiffs never explain why political speech requires a different test from that addressing other content—like art, music, education, medicine, mindfulness, or middle-school angst. And in any event, plaintiffs' approach would emasculate *Fraser* and leave schools with no guidance on when *Fraser* applies in the face of vulgar innuendo and codewords—an ever-evolving language that is native to many teenagers (and foreign to many judges).

For example, what counts as "'plainly' lewd or profane" speech? Pet. 1. Plaintiffs agree a student could not wear "Fuck Joe Biden" apparel to school. *E.g.*, Pet. 18. But what about "**ck", "***k", or "****" Joe Biden? And what if a student with the opposite ideology wore a t-shirt that said: "I don't know who Brandon is but **** Trump"? *Cf.* App. 1a, 6a. Would emojis do the trick? Could a student wear a pin that reads "Joe Biden loves 🍆"? *Cf.* App. 42a.

These questions are not mere courtroom hypotheticals. Consider the shirts available for sale in Appendix A. Are all of them permissible in middle school? Would slight tweaks to some of them make them suitable for school, including by adding an arguable political nexus? How many students—or

teachers, or judges, or judicial clerks—have to appreciate the speech's lewd meaning?

And even assuming that judges could easily ascertain which speech is "lewd" or "profane," what counts as political speech and who decides? Plaintiffs deem the school-election speech in *Fraser* non-political. Why? Under plaintiffs' test, could students and parents argue that many shirts in the Appendix, *see, e.g.*, App. 17a-29a, relate to political and social issues insofar as they explore gender ideology, sexual awareness, and empowerment? *E.g.*, Barry W. McCarthy, *Female Sexual Desire: A Motivating, Empowering Approach*, Psych. Today (Jan. 7, 2014), https://tinyurl.com/mw8du2ht; Elizabeth A. Grill, *Let's Talk About Male Mental Health, Masculinity, and Sex*, Psych. Today (June 1, 2025), https://tinyurl.com/5btbfvnz. Plaintiffs' approach threatens mayhem in middle and high schools, where kids are in the developmental stage of exploring their sexuality—and experimenting with socially acceptable means of discussing sexual topics. *See Talking to Your Child About Sex*, HealthyChildren.org, https://tinyurl.com/36zvp6ax.

Vesting in courts the power to second-guess schools' answers to these questions would risk turning every judgment call by school officials into a federal lawsuit for damages and attorneys' fees. And the signal to school

officials would be clear: The safe course is to err on the side of not regulating lewd and vulgar speech at all.

Plaintiffs' proposal that courts apply *Tinker* to "ambiguously" lewd and vulgar political speech also fails to account for the wide-ranging ills that result from removing all guardrails against middle schoolers' use of vulgar codewords. As *Fraser* explained, the "'fundamental values necessary to the maintenance of a democratic political system' disfavor the use of terms of debate highly offensive or highly threatening to others," and it is "truly the 'work of the schools'" to inculcate those values in children. 478 U.S. at 683 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)); *accord Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, __ F.4th __, 2025 WL 3102072, at *7 (6th Cir. 2025) (en banc). That civics lesson is lost when schools are unable to enforce decorum policies.

Nor is it clear how *Tinker* could or would apply in this context. Although schools can regulate off-campus speech with substantially disruptive effects on campus, *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 188-90 (2021), is the converse true? Can schools restrict the shirts in the Appendix with profane and lewd euphemisms because of effects felt purely off-campus? Many parents prefer to control their children's exposure to sexual discourse

until the topics become age-appropriate (if ever).  *Cf. Mahmoud v. Taylor*, 606 U.S. 522, 547 (2025).  What should schools do when parents call to complain that their children asked, "Mommy, what does f\*\*\* mean?", App. 1a, "Daddy, why does President Trump love to grab cats?", App. 9a-10a, "Grandma, what do 69 and BDSM mean?", App. 27a-31a, or "Grandpa, why are kids wearing pictures of chickens, beavers, pumpkins, and roast beef to school?", App. 21a, 24a, 33a, 36a-39a.  How many parents have to complain?  Can schools account for the harm arising from students' searching the internet for answers and stumbling onto hardcore pornography websites?  There are no easy answers, and plaintiffs do not even try to offer any.

## II.    This Case Does Not Warrant En Banc Review

### A.  There Is No Circuit Split

1.  Plaintiffs identify a supposed split between the panel opinion and the Third and Ninth Circuits over whether *Fraser* applies to political speech that is less than "'plainly' lewd or profane."  Pet. 3; *see* Pet. 1 n.1 (citing *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524 (9th Cir. 1992); *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293 (3d Cir. 2013) (en banc)).  That split is an illusion.

The Ninth Circuit has never recognized a doctrinal difference between "plainly" and "ambiguously" vulgar or lewd speech. That is hardly surprising, since the facts of *Fraser* show that dichotomy is illusory. In *Chandler*, the Ninth Circuit noted that students' pins calling substitute teachers "scab[s]" during a teacher strike could not "reasonably" be considered "per se vulgar, lewd, obscene, or plainly offensive within the meaning of *Fraser*." 978 F.2d at 530. But the court's passing use of the phrase "per se" is a slim reed upon which to premise a circuit split. Indeed, subsequent Ninth Circuit decisions have cited *Chandler* for the simple rule that *Fraser* applies to "vulgar, lewd, obscene, and plainly offensive speech," omitting any "per se" qualification. *See, e.g.*, *Wynar v. Douglas Cnty. Sch. Dist.*, 728 F.3d 1062, 1067 (9th Cir. 2013) (quoting *Chandler*, 978 F.2d at 529).

The purported split with the Third Circuit fares no better. The panel opinion and Third Circuit agree that *Fraser* applies, at minimum, to "plainly … vulgar" political speech. *B.H.*, 725 F.3d at 316. And this case involves exactly that: The panel opinion here concluded that "the uncontroverted origin of the [Let's Go Brandon] slogan shows a plainly vulgar meaning." Op. 13. Although the Third Circuit in *B.H.* thought that breast-cancer awareness bracelets labeled "I ♥ boobies! (KEEP A BREAST)" were "not plainly lewd,"

*B.H.*, 725 F.3d at 302, nothing suggests that the Third Circuit would deny that the shirt here is plainly vulgar when it means the F word.  There is no circuit split here.

Regardless, the Third Circuit's distinction between "plainly" and "ambiguously" lewd political speech finds no support in *Fraser*.  Instead, the Third Circuit overread Justice Alito's concurrence in *Morse v. Frederick*, 551 U.S. 393 (2007), which held that schools may restrict student advocacy of illegal drug use.  The Third Circuit interpreted Justice Alito's concurrence to mean that schools cannot restrict "speech plausibly interpreted as political or social commentary," even when that speech is "ambiguously lewd," unless *Tinker*'s substantial-disruption standard is met.  *B.H.*, 725 F.3d at 309-10.

That conclusion does not follow from Justice Alito's separate opinion.  The concurrence merely echoed the *Morse* dissenters' concern that the Court's holding might chill high-school students from debating "the wisdom of the war on drugs or of legalizing [medical] marijuana."  551 U.S. at 422 (Alito, J., concurring) (quoting *id.* at 445 (Stevens, J., dissenting)).  That passage does not extend to the *Fraser* context.  Indeed, under *Fraser*, schools cannot restrict speech because of its message or political slant.  Rather, schools can only restrict the vulgar or lewd aspect of the speech.  *See, e.g., Fraser*, 478 U.S.

at 683.  As a result, applying *Fraser* does not threaten to silence an entire side of a policy debate in schools.  *See also infra* pp. 15-17.

2.  Plaintiffs (at 2) identify a second split with the First and Second Circuits over whether *Fraser* applies to political speech, but this split is even more dubious.  Neither case involved the type of "offensively lewd and indecent speech" that *Fraser* covers.  *Fraser*, 478 U.S. at 685.  Indeed, in the First Circuit decision, "the parties agree[d] *Tinker* govern[ed]" the case.  *L.M. v. Town of Middleborough*, 103 F.4th 854, 866 (1st Cir. 2024).  And in the Second Circuit case, the court concluded *Fraser* did not apply to a student's shirt because it was not "lewd," "vulgar," "indecent," or "plainly offensive"— not because the shirt was political.  *Guiles ex rel. Guiles v. Marineau*, 461 F.3d 320, 327-29 (2d Cir. 2006).

## B.  En Banc Review Is Not Warranted to Reevaluate *Boroff*

Plaintiffs' criticism of *Boroff v. Van Wert City Board of Education*, 220 F.3d 465 (6th Cir. 2000), does not merit en banc review, either.  The panel opinion narrowly relied on *Boroff* in support of the well-established principle that "determinations of what is impermissibly vulgar, lewd, indecent, or plainly offensive should be left in the hands of teachers, school administrators, and the popularly elected school board," so long as those determinations are

"reasonable and good-faith." Op. 10. And contrary to plaintiffs' assertions, deference to reasonable school-administrator determinations in the realm of student speech remains the rule, making *Boroff*'s deference to school administrators well-founded. Last month, for example, this Court reaffirmed that *Tinker* applies a "reasonableness test," *Defending Educ.*, 2025 WL 3102072, at *11, which necessarily leaves room for a range of judgments. The exceptions to *Tinker* similarly demand only that their application, which "properly rests with the school board," *Fraser*, 478 U.S. at 683, be "reasonable," *Morse*, 551 U.S. at 410.

In any event, even if *Boroff* were a "dead letter," as plaintiffs (at 3) claim, the Court should not invoke the "extraordinary procedure" of en banc rehearing simply to hold *Boroff*'s funeral. *See* 6th Cir. I.O.P. 40(e). *Boroff* has been cited as binding authority within this Circuit fewer than a dozen times since *Morse*—typically for its anodyne observation that plaintiffs cannot use substantive due process "as a fallback constitutional provision" for a free-speech claim. *Boroff*, 220 F.3d at 471.[1] To the extent plaintiffs seek "clarity"

---

[1] *See, e.g.*, *B.A.P. v. Overton Cnty. Bd. of Educ.*, 600 F. Supp. 3d 839, 850 (M.D. Tenn. 2022); *Marshall v. Ohio Univ.*, 2015 WL 7254213, at *10 (S.D. Ohio Nov. 17, 2015); *Brown v. Cooper*, 2015 WL 1129118, at *3 (E.D. Mich. Mar. 12, 2015);

on whether other aspects of *Boroff* "remain[] good law," Pet. 16, they fail to show this 25-year-old, little-cited opinion has proven unworkable or is otherwise worth the time and effort of revisiting.

### C.  The Panel's Decision Is Viewpoint Neutral

Plaintiffs claim the panel's holding facilitates viewpoint discrimination by granting "schools unrestrained authority to suppress speech based on subjective interpretations." Pet. 2 (quoting Op. 20 (Bush, J., dissenting)). But there is no basis for thinking the school would allow shirts criticizing the current President with profane or lewd innuendo, either. *E.g.*, App. 5a-10a. And the record establishes the school allowed students to wear political apparel, regardless of the candidate. *Supra* p. 4. Plus, the panel opinion bakes in safeguards for viewpoint neutrality. Although administrators have "some deference" to determine what is vulgar or profane, the panel still requires those determinations to be reasonable. Op. 10. And the panel cautions courts to "be wary of unreasonable definitions of vulgarity, lewdness, indecency or offensiveness that seem designed to misuse *Fraser* to engage in viewpoint discrimination." Op. 10. In that way, the panel's approach closely follows the

---

*Miller v. Del. Cnty. Comm'rs*, 2014 WL 457552, at *6-7 (S.D. Ohio Feb. 4, 2014); *cf. Sandusky v. Smith*, 2012 WL 4592635, at *8 (W.D. Ky. Oct. 2, 2012).

Supreme Court's school-speech cases, which already afford deference to administrators' speech-related decisions.  *Supra* p. 14.

Plaintiffs (at 9-11) hypothesize that deferring to school administrators' vulgarity determinations will produce disparate outcomes across different schools.  That outcome is a feature of the panel opinion, not a bug.  Vulgarity and profanity change over time.  *See Fraser*, 478 U.S. at 691 (Stevens, J., dissenting).  "Swearwords that would have curled a prudish Victorian's hair in 1890 have lost their potency in the intervening decades."  Op. 13.  And vulgarity and profanity vary by locality.  Ann Arbor schools may have vastly different views of what counts as vulgar than schools in Hillsdale.

Indeed, the same rationale underlies the First Amendment doctrine governing obscenity and obscenity as to minors, which are defined by reference to "community standards."  *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 472, 474 (2025).  As the Supreme Court has explained, "[i]t is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City."  *Miller v. California*, 413 U.S. 15, 32 (1973).  The same goes for the schools in those places.

And plaintiffs' proposed standard—*Tinker*—would not avoid disparate restrictions on student speech across different schools, anyway. The type of speech that will provoke a "substantial disruption" under *Tinker*, 393 U.S. at 514, almost always turns on school-specific facts. *Tinker* itself cited approvingly two Fifth Circuit opinions issued by "the same panel on the same day" that applied the correct standard and reached "opposite result[s]" over the same speech ("freedom buttons") at two schools in Mississippi. *Id.* at 505 n.1 (citing *Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966); *Blackwell v. Issaquena Cnty. Bd. of Educ.*, 363 F.2d 749 (5th Cir. 1966)). This Circuit has done the same, affirming the restriction of Confederate flag t-shirts at one school but remanding for further proceedings under the *Tinker* substantial-disruption test as to another school's restriction. *Compare Barr v. Lafon*, 538 F.3d 554, 564-69 (6th Cir. 2008), *with Castorina ex rel. Rewt v. Madison Cnty. Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001).

### D. Plaintiffs' Policy Arguments Fail

Plaintiffs (at 17-19) forecast that "civic participation will suffer" under the panel's approach. Again, plaintiffs distort the panel's holding, which does not tamp down on political speech writ large. Rather, the panel affords schools the discretion to restrict speech reasonably considered to be vulgar or profane,

regardless of whether that speech includes a political message. Op. 18. *Fraser* blessed that approach: "[I]t is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse." 478 U.S. at 683. And again, the record also forecloses plaintiffs' slippery-slope argument. Tri County students frequently wore political apparel of all stripes without fearing school censorship. *Supra* p. 4.

While plaintiffs (at 19) worry that the panel's approach will fail to prepare students "for life as an American adult," they overlook that this case is about the means of expression. Students can criticize Joe Biden all they want; they just can't suggest he should go f*** himself. Plus, public-school students' free-speech rights are "not automatically coextensive with the rights of adults in other settings." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (citation omitted). The panel's rule places no restrictions on students' ability to engage in vigorous debate about any political or social issue; it merely gives school administrators the latitude to teach students to engage in that discourse in a "civil and effective" way. *Fraser*, 478 U.S. at 687 (Brennan, J. concurring).

# CONCLUSION

The petition should be denied.

Respectfully submitted,

/s/ Lisa S. Blatt

ANNABEL SHEA
KENNETH B. CHAPIE
GIARMARCO, MULLINS & HORTON, PC
  *101 W. Big Beaver Rd., 10th Fl.*
  *Troy, MI 48084*
  *(248) 457-7020*

LISA S. BLATT
  *Counsel of Record*
CHARLES L. MCCLOUD
ERIN M. SIELAFF
CLAIRE E. GRODEN
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lblatt@wc.com*

*Counsel for Defendants-Appellees*

December 1, 2025

# CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 40(d)(3)(A) because it contains 3,671 words, including words manually counted in the visual images.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Expanded BT, size 14.

*/s/ Lisa S. Blatt*
*Counsel for Defendants-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 1, 2025, true and correct copies of the foregoing Response were filed with Clerk for the United States Court of Appeals for the Sixth Circuit and served on the parties through the Court's electronic CM/ECF filing system.

/s/ Lisa S. Blatt
*Counsel for Defendants-Appellees*